MONSERRATE GARCÍA DE QUEVEDO, Plaintiff and Appellee, *v.* MUNICIPAL ASSEMBLY OF AÑASCO, ETC., Defendant and Appellant.

No. 6424. Argued June 15, 1934.—Decided September 29, 1934.

*Ildefonso Freyre* for appellant. *M. Figueroa del Rosario* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

On December 5, 1932, Monserrate García de Quevedo filed with the Municipal Assembly of Añasco a document which in its pertinent part reads as follows:

"1. That on July 24, 1931, by deed No. 73 executed before notary Mario Figueroa del Rosario, of this town, the petitioner purchased from Tomasa López the following property:

" 'A one-story, tile-roofed, frame house, with a balcony on its front, situated on the main street of Añasco, P. R., standing upon a private property lot measuring 1117 square meters, bounded on the North by said street; on the South by the channel "La Puente"; on the East by a house of doña María Arrillaga; and on the West by a house of M. García de Quevedo.'

"2. That due to the fact that said house was in a ruinous state, the petitioner demolished it, cleared and prepared the lot to erect a new building thereon.

"3. That the petitioner intends to build a concrete warehouse, plans for which are attached hereto.

"Therefore, the lot being the private property of the petitioner and in compliance with the ordinance regarding constructions and public ornament, petitioner prays for a license to build said warehouse, and to that effect she accompanies herewith the corresponding fees."

On February 8, 1933, deciding the above petition, the Municipal Assembly enacted an ordinance which, in its pertinent part reads as follows:

"An Ordinance to Grant the Usufruct of a Lot Belonging to this Municipality to Doña Monserrate García de Quevedo to Build Thereon a Concrete Building, and for Other Purposes.

"WHEREAS: Doña Monserrate García de Quevedo moves this Municipal Assembly for a license to construct a concrete building on a lot facing the plaza Ibáñez which she claims belongs to her;

"WHEREAS: The petitioner attaches to her petition a certificate of the registrar of property . . . wherein it is stated that the 1,117 square meters lot . . . is recorded . . . in favor of don Ernesto Esteve Vidal following possession title proceedings . . . of December 16, 1881;

"WHEREAS: According to information gathered by some assemblymen those records were held to be void and of no value by virtue of a judgment entered in an action prosecuted by this municipality on or about the year 1902;

"WHEREAS: The petitioner also attaches to her petition receipt No. 301 dated December 10, 1932, issued to her by the municipal treasurer for licenses and permits fees for the construction of the building because the lot is within the first zone, and further includes a plan of the building which is to be devoted to warehouse;

"WHEREAS: Section 548 of the Municipal Law in force empowers municipal assemblies to grant the usufruct of lots for the construction of buildings under the conditions provided by the ordinances enacted to that effect;

"THEREFORE: Be it enacted by the Municipal Assembly of Añasco, Puerto Rico:

"Section 1.—Doña Monserrate García de Quevedo is hereby granted the usufruct of the lot described in this ordinance and which belongs to the municipality for the construction of a concrete warehouse, subject to the conditions of the plan presented and to the payment in advance of an annual rental of three cents for each meter within the lot, that is, thirty three dollars and fifty one cents, which must be paid before proceeding with the work; she must construct a sidewalk of the same width as that which now exists in said main street along the entire front to said street; and she must obey and fulfill all ordinance approved or which shall be approved relating to public health and ornament, and it is further provided that the petitioner nor anybody else would install in said building First Aid Station Emergency Rooms, Hospitals, Clinics, or any other similar institutions.

". . . . . . . . . . ."

Feeling aggrieved, on February 24, 1933, the petitioner brought this *certiorari* before the District Court of Maya-

güez praying for the annulment of the ordinance in question on the following grounds:

". . . . because it fails to specify the respective rights of the grantor and grantee, or of their successors, as to the ownership of the buildings, or the reconstruction thereof in case they were destroyed or deteriorated and because it is not stated either that any buiding on that lot shall be subject to the payment of taxes, thus violating the provisions of Section 70 of the Municipal Law in force.

"Because it imposes on the petitioner the duty of paying an annual rental or tax for the use of the lot and does not guarantee uniformity in taxation since neither that ordinance nor any other provides that the tax of 3 cents imposed on the petitioner for each square meter on the first zone shall be the same for all the lots on said zone and that it shall be imposed without discrimination to all persons who enjoy now and in the future the use of lots on said zone, in violation of the provisions of Section 1, paragraph 8 of the Constitution of the United States and of Section 2 of the Organic Act of Puerto Rico, as approved by the Congress of the United States on March 2, 1917.

"Because it impairs the free use and enjoyment of the property of the petitioner when it imposes as a condition that neither her nor anybody else shall install in the buildings to be constructed 'First aid stations, emergency room, hospitals, clinics or any other similar institutions,' in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States of America and of Section 2 of the Organic Act of Puerto Rico, approved by the Congress of the United States on March 2, 1917.'

"Because it impairs the value of a contract, that of purchase and sale entered into by the petitioner and Doña Tomasa López, relating to the purchase and sale of the lot in question, by providing that the lot belongs to the municipality and that it has always been property of the municipality, without hearing the petitioner or the said vendor, in violation of the provisions of Section 1, paragraph 10, of the Constitution of the United States, and of Section 2 of the Organic Act of Puerto Rico, as approved by the Congress of the United States on March 2, 1917.

"Because said ordinance deprives the petitioner of her property without due process of law by declaring and providing that said lot does not belong to her but to the municipality and by taking possession thereof and granting it as common land, (*ejido*) that is a property of the municipality and for public use, without giving a

hearing to the petitioner in relation to her property rights, without giving her a chance to a prior determination of that right nor to day in court, without just compensation therefor, all in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States of America, of Section 2 of the Organic Act of Puerto Rico, as approved by the Congress of the United States on March 2, 1917, and of Section 282 of the Revised Civil Code of 1930.''

The writ was issued and the assembly moved for its discharge on the following grounds:

''1.—Because in certiorari proceedings of this nature the only question that can be decided is whether or not the assembly had jurisdiction or if it exceeded its powers, whether or not the procedure followed in the exercise thereof was erroneous, whether or not it acted *ultra vires*; and no questions of title to real property can be considered.

''2.—Because the ordinance in question does not infringe the constitutional rights of the complainant and is not contrary to the Organic Act or to the Laws of Puerto Rico.

''3.—Because the complainant has failed to exercise other adequate remedies at law which were open to her.

''4.—That the Municipal Assembly of Añasco is not the proper party defendant in this case.''

The *return* comprises the petition and the ordinance that we have copied; a certificate issued by the Registrar of Property of Mayagüez from where it appears that on October 14, 1901, following dominion title proceedings in the district court, the Municipality of Añasco recorded a dominion title to 50⅓ acres (*cuerdas*) from the common lands (*ejidos*) of the Municipality acquired by segregation from the 72⅓ acres (*cuerdas*) granted to it by don Luis de Añasco, with notes of many other segregations; another certificate issued by that same officer from where it appears that the record of the lot in question, made in January 25, 1882, in favor of Ernesto Esteve Vidal following possessory title proceedings, is still in force; and copy of the unrecorded deed whereby Constantino Fernández, as attorney-in-fact of Tomasa López

de Arrillaga, sells on July 24, 1931, to petitioner Monserrate García de Quevedo for $225 a frame house with the lot in question, stating that the property is not recorded in the registry.

The court took the case under advisement and decided it by its judgment dated May 3, 1931, which in part reads as follows:

"WHEREAS: The Court has reached the conclusion that the said ordinance is void and of no value because though the municipality may refuse permission to construct under claim to the ownership of the lot and though it could have granted its use as of public property, it is not empowered to impose the conditions embodied in said ordinance, nor to deprive a person of his property without due process of law, and least to impose a tax which is not uniform throughout the municipality, the Court further finding that the Municipal Assembly acted with prejudice in this case judging by the way in which the ordinance is written;

"THEREFORE: The petition in certiorari is hereby granted and the ordinance approved by the Municipal Assembly of Añasco on February 8, 1933 and approved by the mayor on the 11th of the same month and year entitled: 'An ordinance to grant the usufruct of a lot belonging to this Municipality to Doña Monserrate García de Quevedo to build thereon a concrete building, and for other purposes,' is hereby declared null and of no legal effect. Costs and attorney's fees are imposed on the party defendant."

Feeling aggrieved the assembly took an appeal to this Court, and the appeal was heard on the 15th of June last.

■ The petitioner has exercised the judicial remedy of certiorari specifically provided for by the Municipal Law in force—Act No. 53 of 1928, Sess. Laws, p. 334—in Section 83 as follows:

"That on motion of the aggrieved party, the district court shall have jurisdiction—

"(a) To annul or review by writ of certiorari any legislative or administrative act of the municipal assembly, board of administration, mayor or other municipal official, which infringes the constitutional rights of the complainants or which is contrary to the Organic Act or to the laws of Porto Rico."

Emphasizing the merits of his motion to quash the writ the appellant claims that the question raised by the petitioner are not proper matters to be decided in a *certiorari* proceedings, even though it is the *certiorari* specifically authorized by the municipal law and not the regular *certiorari*.

It is self evident that a question of title is involved herein. The petitioner addressed the assembly as owner of the lot in question attaching to her petition the documents whereupon she bases her rights. And the assembly, in enacting the ordinance whose annulment is sought, started from the premise that the owner of the lot is not the petitioner but the municipality and granted the petitioner the usufruct thereof.

The appellee, avoiding the question, says in her brief:

"The defendants argue that the appellant had other remedies at law and that she failed to exercise them; and that for said reason the writ should have been denied or quashed. Such averment is based on two errors committed by the defendants in weighing the proceedings; they believe that the only purpose of the petitioner is to settle her property rights, in which case she ought to have availed herself of the remedy provided by Section 282 of the Code of Civil Procedure of Puerto Rico; and they believe that the *certiorari* proceedings instituted herein is the regular one and they try to apply all the precedents established by higher courts regarding such regular *certiorari*.

"A perusal of the petition will show that the main purpose of the petitioner was not to clear out her property right to the lot; of course, to be in accordance with the *return* and further actions of the Assembly . . . a specific impeachment was made to the ordinance on that ground, embodied in paragraph (*d*) of Section 9 of the petition; but it is evident that the petition has other averments as sufficient as this one, and there are some others more essential than this one, for example, the ones really essential embodied in paragraphs (*a*) and (*b*) of said Section 9. . . . If the above were the only ground for challenging the ordinance, the court could have dismissed the action; but if besides that one, those others were stated, the court could disregard that one, as it did, and pass upon those which conferred on it full jurisdiction of the case. In doing that it acted correctly and there was no error."

The truth is that we fail to see how could that question of title be disregarded, unless the petitioner clearly and definitely abandons her position as owner and accepts that as usufructuary.

If the petitioner insists on her property rights, then when said right was denied to her by the Municipal Assembly certainly she should have appeared before the court under the procedure authorized by Section 282 of the Code of Civil Procedure, to wit:

"An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

If she gives up her claim to the ownership, and bases her case upon the property right of the municipality, then we will feel inclined to decide that the petitioner has no grounds to impeach the ordinance, or at least that the records do not disclose facts sufficient to conclude that the assembly exceeded its powers or violated any constitutional right of the petitioner or the Organic Act or any law of Puerto Rico.

■ Both parties agree that Section 70 of said Municipal law is the one which governs the granting of lots. Said Section, in its pertinent part, reads as follows:

"On petition, the Municipal Assembly may grant lots in perpetuity for the construction of houses thereon, under such conditions as the assembly may determine by ordinance approved for the purpose; and where a lot has been granted as aforesaid, the owner of the house constructed thereon shall have the use of said lot during such time as he maintains on said lot a building in good condition, in accordance with regulations prescribed by said ordinance.

"Municipal assemblies shall specify in such concessions as they may make the respective rights of the grantor and grantee, or their successors, as to the ownership of the building or the reconstruction thereof in cases where they are destroyed or become deteriorated.

"The concession shall necessarily be made by an ordinance or resolution adopted by the majority of the total number of members of the assembly; Provided, That no petition shall be taken into consideration if the petitioner does not attach thereto the plans and

estimates for the building to be constructed on the lot applied for, so that the assembly may be cognizant of the work in granting the concession.

" . . . . . . . . . .

"Among the terms of the concession made in each case, that of payment of an annual rental to the municipality making the concession may be prescribed, which rental shall be at least equal to the amount of the property tax which would appertain to said property if such property were subject to the payment of such tax, and in the aforesaid concession there shall also be stipulated that any building on the property leased shall be subject to the payment of taxes."

The first ground alleged for the annulment of the ordinance is, as aforesaid, that it fails to specify the respective rights of the grantor and grantee or of their successors, as to the ownership of the buildings or the reconstruction thereof in case they were destroyed or became deteriorated, and that any building on that lot will be subject to the payment of taxes.

Really, paragraphs 2 and 6 of Section 70, copied above, provide such specifications to be made in the concessions, and it was not done herein, but that makes the ordinance deficient and not void. A mere petition to the assembly and an enmendatory supplementary ordinance would have sufficed to correct the fault.

It is further alleged that the ordinance is void because it fails to impose an uniform rental or tax.

A rental is not a tax, and what the law says is that "among the terms of the concession made in each case, that of payment of an annual rental to the municipality making the concession may be prescribed, which rental shall be at least equal to the amount of the property tax which would appertain to said property if such property were subject to the payment of such tax." We fail to detect any violation to the law in the condition imposed regarding this point by the ordinance in question.

■ And finally it is claimed that the limitation imposed on the use of the building is unreasonable.

The law invoked begins by stating that, on petition, the municipal assembly may grant lots in perpetuity for the construction of houses thereon, *under such conditions as the assembly may determine* by ordinance approved for the purpose.

The power to determnie the conditions under which the usufruct of the property is granted, which is inherent to the condition of owner thereof, is specifically recognized by the law.

Is the condition in the instant case arbitrary? Is it contrary to the ends of the law? To our judgment, the records before this Court preclude an affirmative answer to that question. We ignore the reasons of the assembly to act the way it did. Perhaps they were not just, but the limitation imposed is not of such a nature as to warrant a conclusion, by the mere fact of its imposition, that it is unreasonable and contrary to law, equity or justice. We can think of cases in which such limitation is justified in certain places of a community.

The situation that caused the annulment of the ordinance in the case. of *San Diego Tuberculosis Association* v. *City of San Diego,* 186 Cal. 225, invoked by the appellee, is not the same as that in the present case.

The facts in said case are stated in the opinion of the Supreme Court, as follows:

"The plaintiff is a corporation formed for benevolent purposes, and has for some years owned and operated a hospital for the treatment of those afflicted with tuberculosis. The hospital is located in the city of East San Diego, a small municipality adjoining the city of San Diego proper, and the defendants are the municipality and certain of its officials. On July 3, 1919, the city trustees passed an ordinance declaring every hospital for the treatment of persons afflicted with contagious or infectious diseases to be a nuisance, making the maintenance of any such hospital within the limits of the city a misdemeanor, making its maintenance a separate offense

for each day it was maintained, and providing for punishment by fine or imprisonment for every offense. After the passage of the ordinance, the city authorities commenced a series of criminal prosecutions against the plaintiff, and threatened to arrest and prosecute its officers and employees and to keep on arresting and prosecuting them until the plaintiff should be compelled to close the hospital. Upon the grounds that the ordinance is invalid and that the plaintiff would be irreparably injured in its property right to maintain and conduct the hospital and had no other adequate means of relief, an injunction was asked enjoining the defendants from attempting to enforce the ordinance.''

And the doctrine was stated in the following terms:

''Two questions are presented: First, is the ordinance invalid, and, second, even if it is, can its enforcement by the city officials be enjoined? The answer to both of these questions seems to us plain.

''The ordinance can be justified only as an exercise of the city's police power. 7. This power is, of course, very broad, but it is not without limitation. One limitation enforced in numerous cases is that an ordinance purporting to be an exercise of the city's police power 'may not be arbitrary or unreasonable. The exercise of the police power cannot be made a mere cloak for the arbitrary interference with or suppression of a lawful business.'

''2. Such being the law, was the present ordinance a reasonable one in its essential feature, that of prohibiting within the city any hospital for the treatment of contagious or infectious diseases? Such prohibition is very different from regulation and can be justified only on the ground that such a hospital, no matter how well conducted, is a menace to the public peace, morals, health, or comfort. That a well-conducted, modern hospital, even one for the treatment of contagious and infectious diseases, is not such a menace, but, on the contrary, one of the most beneficent of institutions, needs no argument. There is not the slightest danger of the spread of disease from it, and this is the only possible ground on which objection could be made to it. We have no hesitation in holding an ordinance prohibiting the maintenance anywhere within a city of an institution so necessary in our modern life and so beneficent to be wholly unreasonable and invalid. . . . .

''As to the second question, the enjoining of the enforcement of the ordinance, the rule is thus stated in *Abbey Land Co.* v. *San*

*Mateo,* just referred to (167 Cal. 440, Ann. Cas. 1915 C, 804, 52 L.R.A. (N. S.) 408, 139 Pac. 1070).

"It is evident in the present case that the enforcement of the ordinance would cause substantial and irreparable injury to the plaintiff's property, and that against the threat of its enforcement by the repeated prosecutions which the ordinance permits, the plaintiff has no adequate remedy. The case, therefore, comes within the rule stated in *Abbey Land Co.* v. *San Mateo, supra,* and upon the facts alleged in the complaint the plaintiff was entitled to have the enforcement of the ordinance enjoined."

In the case at bar no general prohibition to establish clinics in the city applying also to those already established, is involved, but the concession of the usufruct of a certain lot belonging to the municipality which according to the law may be granted for the construction of houses under such conditions as the assembly may determine by ordinance. It seems that the old house standing on that lot was devoted to residential purposes and the petitioner herself specifies that the new building is to be a warehouse, that is, a house or building where merchandise is kept for storage or sale.

Thus, under any aspect that the case is considered, either because the *certiorari* is not the proper remedy to decide a conflict of titles, or because it has not been shown that the concession as made violates any constitutional right of the petitioner or that it is contrary to the Organic Act or to any other law of Puerto Rico, the judgment appealed from must be reversed and another entered denying the petition, without any special imposition of costs.